Dominic GARCIA, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

United Parcel Service,
Intervenor-Respondent.

No. 85–7262.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 10, 1985.

Decided March 25, 1986.

As Amended April 25, 1986.

David A. Rosenfeld, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for petitioner.

Judith Dowd, Robert I. Tendrich, N.L.R.B., Washington, D.C., Joseph E. Wiley, Laurence Corbett, Corbett & Kane, Oakland, Cal., for respondent.

Before BROWNING and TANG, Circuit Judges, and D. WILLIAMS,* District Judge.

TANG, Circuit Judge.

Dominic Garcia, a United Parcel Service (UPS) employee, refused to obey a supervisor's order to tap his horn when he stopped to make residential deliveries because state law forbids horn honking unless necessary for safety. UPS discharged him for gross insubordination but after he filed a grievance the joint labor-management arbitration committee changed his discipline to a 10-day suspension. Garcia filed an unfair labor practice (ULP) charge under Section 8(a)(1) of the National Labor Relations Act. 29 U.S.C. § 158(a)(1) (1982) ("NLRA" or "the Act"). The National Labor Relations Board ("NLRB" or "the Board") dismissed his complaint because of its decision to defer to the arbitration award and Garcia has petitioned this court for review of the NLRB deferral. We refuse to enforce the Board's order because its deferral decision was an abuse of discretion.

## FACTS

Garcia had worked as a package delivery driver for UPS in Stockton, California for one and one-half years when on January 24, 1983 a supervisor scheduled a ride-check to assist in improving his productivity on the job. When Garcia began his deliveries in a residential area, his supervisor instructed him to tap his horn when he stopped to make a delivery, as part of UPS's "Four-Way Attract Attention Method." Garcia refused, explaining that he thought it was against the law to honk his horn in those circumstances.[1] In a meeting later that day, the Division Manager told Garcia if horn tapping were illegal UPS would take responsibility and pay any fines if drivers were cited, and that Garcia should obey the order to tap his horn and file a grievance through his Union business representative. Garcia indicated he would not tap his horn. UPS discharged Garcia for gross insubordination on January 24, 1983.

Garcia's Union, the Teamsters Union, Local 439, filed a grievance on his behalf. The collective bargaining agreement between the Union and UPS provided for a Joint Committee comprised of three Union and three UPS representatives which was to meet regularly and whose majority decisions were to be binding and final. The Joint Arbitration Committee held a hearing on February 8, 1983 and reduced Garcia's

---

* Honorable David W. Williams, Senior United States District Judge for the Central District of California, sitting by designation.

1. The California Vehicle Code restricts the use of a horn to occasions when it is necessary for safe operation or as a theft alarm system. Cal. Veh.Code § 27001 (West 1985).

discharge to a 10-day suspension. The Union then grieved UPS's horn tapping policy as violative of the collective bargaining agreement, article 11, section 3, which provided no employee could be required to violate traffic laws. In July 1983 the Joint Committee denied the grievance because UPS agreed to assume full responsibility for any citations issued for horn tapping.

Garcia filed an ULP based on his January 24 discharge, alleging that UPS discharged him for engaging in protected concerted activity in violation of § 8(a)(1) of the NLRA. A hearing on September 29, 1983 resulted in the Administrative Law Judge (ALJ) issuing a decision on March 14, 1984 in which he dismissed the complaint in its entirety based on his conclusion that Garcia's refusal to tap his horn was not protected concerted activity. On February 28, 1985 the Board affirmed the ALJ's dismissal but on the ground that it deferred to the grievance award made by the Joint Committee, and thus the Board did not reach the merits of the alleged unfair labor practice. On May 9, 1985 Garcia filed a petition for review of the Board's decision.

## DISCUSSION

### A. Standard of Review

■ This court's review of the Board's deferral decision is limited to determining whether the Board has abused its discretion. *Servair, Inc. v. NLRB*, 726 F.2d 1435, 1439 (9th Cir.1984) (citing *Hawaiian Hauling Service, Ltd. v. NLRB*, 545 F.2d 674, 676 (9th Cir.1976), *cert. denied*, 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1061 (1977)). This court will not deny enforcement of a deferral decision unless the Board clearly departs from its own standards or the standards themselves are invalid. *Servair*, 726 F.2d at 1439.

### B. The Board's Deferral Standards

■ The Board has authority under section 10(a) of the NLRA, 29 U.S.C. § 160(a) (1982) to adjudicate unfair labor practices. It also has broad discretion to respect an arbitration award if to do so serves the fundamental purposes of the Act. *Carey v. Westinghouse Corp.*, 375 U.S. 261, 270–72, 84 S.Ct. 401, 408–09, 11 L.Ed.2d 320 (1964). One purpose of the Act is to promote industrial stability by encouraging private dispute resolution through a mutually agreeable arbitration process. *Gateway Coal Co. v. Mine Workers*, 414 U.S. 368, 377–79, 94 S.Ct. 629, 636–37, 38 L.Ed.2d 583 (1974). Another equally important objective is to prevent unfair labor practices and thus protect employees in the exercise of their protected Section 7 rights. *Ad Art. Inc. v. NLRB*, 645 F.2d 669, 675–76 (9th Cir.1980).

The Board's deferral standards favor deferral to an existing arbitration award if: (1) the arbitration proceedings were fair and regular; (2) the parties agreed to be bound; (3) the decision was not "clearly repugnant to the purposes and policies of the Act," *Spielberg Manufacturing Company*, 112 N.L.R.B. 1080, 1082 (1955); (4) the contractual issue was factually parallel to the unfair labor practice issue; and (5) the arbitrator was presented generally with the facts relevant to resolving the ULP, *Olin Corporation*, 268 N.L.R.B. 573, 574 (1984). The *Olin* Board said the burden is on the party arguing against deferral to demonstrate defects in the arbitral process or award. *Id.* The *Olin* Board also explained that the *Spielberg* standard of repugnancy to the Act means that "[u]nless the award is 'palpably wrong,' i.e., unless the arbitrator's decision is not susceptible to an interpretation consistent with the Act, [the Board] will defer." *Olin*, 268 N.L.R.B. at 574 (footnote omitted).

### C. Application of the Deferral Standards

■ In this case, the ALJ had dismissed Garcia's ULP charge because he did not find Garcia's individual refusal to honk his horn to be concerted activity protected by the Act. The Board found this conclusion to be erroneous because Garcia's conduct was concerted activity under the Board's view first announced in *Interboro*

*Contractors,* 157 N.L.R.B. 1295 (1966), *enf'd* 388 F.2d 495 (2d Cir.1967), and recently endorsed by the Supreme Court in *NLRB v. City Disposal Systems,* 465 U.S. 822, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984), that an invocation of a right rooted in a collective bargaining agreement is concerted activity even if an individual acts alone. *City Disposal,* 104 S.Ct. at 1511. Even though the Board found Garcia's action to be concerted activity, it dismissed his complaint without reaching the merits of the ULP charge because it held Garcia had failed to meet his burden of showing the arbitration award was "clearly repugnant" to the Act. Garcia concedes that the other four deferral standards were met because (1) the committee proceedings were fair and regular; (2) the parties agreed to be bound; (3) the contractual and ULP issues were factually parallel; and (4) the arbitration panel heard the facts relevant to resolving the ULP.

The Board reasoned that the Committee considered all the facts relating to the ULP and that it reached an award consistent with the Act when it disciplined Garcia for his concerted activity because the refusal to honk his horn was not necessarily protected activity. The arbitration committee did not reach any conclusions about whether its discipline comported with the Act, but the Board found that the Committee's discipline of Garcia meant it thought he had a more reasonable means of enforcing his contractual rights. The Board read *City Disposal* to say concerted activity might not be protected if an employee has alternative means to secure his rights, 104 S.Ct. at 1514, and concluded the Committee "undoubtedly" had the "facts necessary to resolve whether the grievance procedure presented a reasonable alternative to Garcia's refusal to tap his horn as instructed and whether Garcia's refusal to work as directed properly subjected him to some form of discipline." The Board thought the Committee's award could be interpreted as meaning Garcia's conduct was unprotected and it found that decision to be "susceptible to an interpretation consistent with the Act" and therefore not "palpably wrong." We disagree.

Deferral was inappropriate because: (1) to permit discipline of an employee who refuses to violate a state law violates § 8(a)(1) of the NLRA in that it punishes him for engaging in protected concerted activity; and (2) to permit such discipline violates public policy. For both reasons the arbitration decision is repugnant to the Act, and the Board clearly departed from its own standards when it decided to defer to the award.

A number of Board decisions have upheld employee refusals to operate vehicles in violation of state law as protected concerted activity. In *Varied Enterprises, Inc.,* 240 N.L.R.B. 126, 132 (1979), the Board said an employee had a right to refuse to carry out an order which would result in a violation of law unless his refusal was based upon a malicious motive to frustrate the employer's business operations. The statute at issue in that case regulated vehicle length but the Board said an employee's effort to have his employer comply with any "legal standards (*safety, economic or otherwise*)" was protected. *Id.* (emphasis added). The Board also said employees have the right "to refuse to violate state laws and guarantee to themselves legal working conditions" because to hold otherwise would put "the Board in a position of an aider and abettor o[f] such violations." *Id.* Similarly, in *Ogden & Moffett Co.,* 254 N.L.R.B. 1349 (1981) and *Transport Service Co.,* 263 N.L.R.B. 910 (1982), the Board held that refusing to operate vehicles which exceeded state statutory weight limits was protected activity. Furthermore, at least one other Circuit Court has refused to defer to an arbitration award in a case in which an employee was discharged for refusing to operate an overweight vehicle, saying "[n]o contract provision or arbitration award can permit an employer to require his employees to violate state laws. . . . [Such an] award below grants the Company a license to violate state law and as such is void as against public policy and repugnant to the purposes of the National Labor Relations Act."

*Banyard v. NLRB,* 505 F.2d 342, 347 (D.C. Cir.1974).

The Board would have us believe that *City Disposal* somehow altered the Board's longstanding policy of viewing compliance with the law as protected activity. In *City Disposal,* the Court upheld a Board decision holding that an employee's refusal to drive a truck he knew had malfunctioning brakes was concerted Section 7 activity. 104 S.Ct. at 1516. The Sixth Circuit Court of Appeals had denied enforcement of the Board's order because it did not believe the employee's actions were concerted activity. *City Disposal Systems, Inc. v. NLRB,* 683 F.2d 1005, 1008 (6th Cir.1982). Thus, the Supreme Court directed its attention primarily to analyzing the concept of concerted activity in the context of an individual's efforts to enforce contract rights unilaterally. The Court noted that the "principal tool" an employee uses to invoke his contract rights is the processing of a grievance. *City Disposal,* 104 S.Ct. at 1513. It went on to say:

> In practice, however, there is unlikely to be a bright-line distinction between an incipient grievance, a complaint to an employer, and perhaps even an employee's initial *refusal to perform a certain job that he believes he has no duty to perform.* It is reasonable to expect that an employee's first response to a situation that he believes violates his collective-bargaining agreement will be a protest to his employer.

*Id.* at 1513–14 (emphasis added).

Only then, in dicta, did the Court point out that such concerted activity might not necessarily be protected under the Act because "[a]n employee may engage in concerted activity in such an abusive manner that he loses the protection of § 7." *Id.* at 1514. The only indication the Court gives of what it means by such abusive means of enforcing contractual rights is its citation to two cases in which employee conduct was presumably abusive. *See, e.g., Crown Central Petroleum Corp. v. NLRB,* 430 F.2d 724, 729 (5th Cir.1970) (an employee's insubordinate acts were accompanied by abusive and profane language directed at his employers in a meeting involving his co-workers); *Yellow Freight System, Inc.,* 247 N.L.R.B. 177, 181 (1980) (employee refusal to complete a freight haul constituted work stoppage or slow down expressly prohibited in a no-strike clause). The Court also says an employer may limit the availability of certain methods of invoking contract rights through a provision in the collective bargaining agreement, such as a no-strike provision. If an employee then used such a proscribed method his activity would not be protected. *City Disposal,* 104 S.Ct. at 1514.

None of these strictures is applicable to Garcia's refusal to tap his horn. In arguing that *City Disposal* means that when there is a reasonable alternative to refusing to follow an order, an employee must follow the order, the Board is making a completely unwarranted extension and distorting the rule of that case. Garcia's behavior was neither abusive nor disruptive of company discipline. Rather, it was, as the *City Disposal* Court described, "both a natural prelude to, and an efficient substitute for, the filing of a formal grievance." *Id.* We do not believe a refusal to break a law can be categorized as an abusive manner of enforcing contract rights. Thus, we hold that Garcia's refusal was protected concerted activity.

■ We also hold that punishing an employee for refusing to break the law is contrary to public policy. The Board argues that a desire to obey traffic laws is not protected by the NLRA because the Act is not designed to encourage compliance with traffic laws and the Board is not empowered to correct all illegality. General policy objections to making the NLRB another agency for enforcement of state traffic laws only cloud the issue of whether the Board should defer to an arbitration decision which punishes an employee for invoking his contractually guaranteed right not to be asked to violate any state laws. The Board may not be charged with enforcing all laws, but it surely is not empowered to condone law violation.

■ We believe that even though UPS and other employers may think they have legitimate business reasons for placing themselves above the law, we as a court of law must not reinforce such a view. Despite the current popularity of cost-benefit analysis, we must insist that the rule of law requires, at an irreducible minimum, that all citizens obey the law regardless of economic cost. We note that the parties in this case informed the court that the Union and UPS have agreed that UPS employees will disobey ordinances prohibiting double parking and horn tapping in exchange for UPS's agreeing to pay any fines imposed for these violations. We expressly disapprove any such accommodation which serves only to breed or reinforce a cynical view of the operation of law in this society—that those with enough sophistication, money, and influence are exempt from its requirements and may be specially licensed or privileged to ignore and disobey the law and that obedience to the law is reserved for the unsophisticated, the poor, and the powerless.

There is no principled basis for distinguishing between laws that employees are within their rights to choose to obey and those they choose to disobey. Apparently the Board believes that an employee given an unlawful order is sometimes obliged to "obey and grieve." We prefer the alternative view that a citizen's first obligation is to obey the law, not the unlawful commands of an employer. Particularly in this case, where we know that the outcome of grieving the policy was a decision that the company would assume liability for the consequences of the violation, rather than an end to law violation, we do not see obeying and grieving as a responsible course of action. To adopt the Board's reasoning would put us in the position the District of Columbia Circuit Court of Appeals described, of aiding and abetting law violation. *Banyard,* 505 F.2d at 347. This position is repugnant to public policy and to the NLRA, and the Board erred in deferring to the arbitration award.

## CONCLUSION

The Board concluded the arbitration award was not repugnant to the Act because Garcia's conduct was not protected activity. It reached that conclusion only through a strained reading of *City Disposal* and by ignoring all of its prior decisions upholding employee refusals to break laws as protected activity. Thus, we hold the Board departed from its own standards and abused its discretion in deciding to defer to the arbitration award. For these reasons we grant Garcia's petition and refuse to enforce the order of the Board. The cause is remanded to the Board for consideration of the unfair labor practice charge.

ENFORCEMENT DENIED.