Edward Lee VINCENT,
Plaintiff-Appellant,

v.

TREND WESTERN TECHNICAL
CORPORATION and Does 1 to
5, Defendants-Appellees.

No. 85–6562.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 5, 1986.

Decided Sept. 22, 1987.

Carl B. Pearlston, Jr., Torrance, Cal., for plaintiff-appellant.

Pamela J. Thomason, Los Angeles, Cal., for defendants-appellees.

Before WALLACE, SNEED and SCHROEDER, Circuit Judges.

WALLACE, Circuit Judge:

Vincent appeals the district court's dismissal of his action for wrongful discharge and deprivation of constitutional rights. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part, and vacate and remand in part.

## I

Between August 10, 1981, and June 7, 1982, Vincent was employed by the Trend Western Technical Management Corp. (Trend) as a work control specialist. Trend had a contract with the United States Air Force to perform certain maintenance services at an Air Force base. Vincent alleges that, while employed by Trend, he informed government inspectors and investigators that Trend was engaged in a series of illegal practices in violation of the terms of its contract with the government. Vincent claims further that Trend discharged him in retaliation for his refusal to "participate silently" in these practices and for reporting them to the government.

While employed by Trend, Vincent was represented by Local 501 of the International Union of Operating Engineers, AFL–CIO. Vincent filed a grievance regarding his dismissal, which was resolved adversely to him. On June 23, 1982, the union informed Trend that it would not take the claim to arbitration.

Nearly two years after his dismissal, Vincent filed a wrongful termination action against Trend in California state court. Trend removed the action to the federal district court, which permitted Vincent to file an amended complaint. The complaint asserted claims for wrongful termination under California Labor Code § 2856 and for the violation of Vincent's federal constitutional rights. Trend then successfully moved to dismiss Vincent's action with prejudice.

## II

■ We treat first Vincent's wrongful termination claim. The district court held, on the basis of our decision in *Olguin v. Inspiration Consolidated Copper Co.*, 740 F.2d 1468 (9th Cir.1984) (*Olguin*), that this claim was preempted by federal labor law. Vincent argues that his claim can be distinguished from *Olguin*, and that we should instead apply our holding in *Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367 (9th Cir.1984) (*Garibaldi*), cert. denied, 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985), and reverse the district court.

Trend argues that Vincent's claim is preempted both by section 8 of the National Labor Relations Act (NLRA), 29 U.S.C. § 158, and by section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. We review these issues of law de novo. *See United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ In *Farmer v. United Brotherhood of Carpenters and Joiners*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (*Farmer*), the Supreme Court set forth a balancing test for us to use in determining whether the NLRA preempts a state tort claim brought by an employee against his union. In *Garibaldi*, we extended the application of the *Farmer* balancing test to determinations of preemption under section 301 of the LMRA. *Garibaldi*, 726 F.2d at 1369, 1373–75. In *Olguin*, we followed *Garibaldi* and applied the same balancing test to a claim for wrongful discharge in violation of state public policy, concluding that the action was preempted by section 301. *Olguin*, 740 F.2d at 1473, 1475.

Subsequent to our decisions in *Garibaldi* and *Olguin*, however, the Supreme Court in *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (*Allis-Chalmers*), established a test differing from the *Farmer* NLRA preemption test for determining preemption under section 301 of the LMRA. *See id.* at 212 n. 6, 105 S.Ct. at 1911 n. 6. In the district court, Trend argued that Vincent's state law claim was preempted by section 301. The district court should have applied the *Allis-Chalmers* test to resolve this issue. *See International Brotherhood of Electrical Workers, AFL–CIO v. Hechler*, —— U.S. ——, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987); *Harper v. San Diego Transit Corp.*, 764 F.2d 663, 667–69 (9th Cir.1985); *Scott v. Machinists Automotive Trades District Lodge No. 190*, 815 F.2d 1281, 1283 (9th Cir.1987); *Tellez v. Pacific Gas & Electric Co.*, 817 F.2d 536, 537 (9th Cir.1987). Instead, it analogized the case to *Olguin*, even though *Olguin*, decided prior to *Allis-Chalmers*, had not applied the new *Allis-*

*Chalmers* test. We therefore must vacate the district court's judgment to the extent it rests upon the conclusion that Vincent's claim was preempted by section 301 and remand for reconsideration in light of *Allis-Chalmers.*

■ Trend also argues that Vincent's claim is preempted by section 8 of the NLRA, 29 U.S.C. § 158. Although this argument was raised for the first time on appeal, we must address it because NLRA preemption affects the choice of forum, not merely the choice of law. *International Longshoremen's Association, AFL–CIO v. Davis,* 476 U.S. 380, 106 S.Ct. 1904, 1907, 90 L.Ed.2d 389 (1986); *Johnson v. Armored Transport of California, Inc.,* 813 F.2d 1041, 1043–44 (9th Cir.1987). Trend contends that Vincent's claim is preempted because "in the context of a collective bargaining agreement, discharging an individual employee for refusing to violate the law" represents interference with a protected concerted activity under section 7 of the Act, 29 U.S.C. § 157. The parties do not dispute that if Vincent was discharged for engaging in a protected concerted activity, his complaint was within the exclusive jurisdiction of the National Labor Relations Board and was properly dismissed. *See Buscemi v. McDonnell Douglas Corp.,* 736 F.2d 1348, 1350 (9th Cir.1984) (*Buscemi*). The question is whether Vincent's action constitutes a protected concerted activity.

■ Trend argues that Vincent's reporting of perceived illegalities to federal authorities was protected concerted activity under our decisions in *Buscemi* and *Garcia v. NLRB,* 785 F.2d 807 (9th Cir.1986) (*Garcia*). We find neither case controlling. In *Buscemi,* the plaintiff alleged that he had been discharged in retaliation for circulating petitions and voicing employee complaints. We observed that "[a]ctivities to redress complaints about working conditions" are concerted protected activities. *Id.* at 1350. Vincent, in contrast, merely reported some allegedly illegal activities of his employer. There is no indication in his complaint or elsewhere that his reports in any way involved working conditions.

Nor does reliance on *Garcia* help Trend. In *Garcia,* we found that disciplining an employee for refusing to violate state law contravened section 8(a)(1) of the NLRA because it represented punishment for a protected concerted activity. 785 F.2d at 810. In reaching this result, we relied on the Supreme Court's opinion in *NLRB v. City Disposal Systems, Inc.,* 465 U.S. 822, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984) (*City Disposal*). *Garcia,* 785 F.2d at 810–11. *City Disposal* and *Garcia,* however, both involved employees whose collective bargaining agreements provided that they would not be required to violate either traffic laws or safety regulations. *See City Disposal,* 465 U.S. at 824–25, 104 S.Ct. at 1507; *Garcia,* 785 F.2d at 809. The refusal of these employees to violate the law was thus grounded upon the terms of their collective bargaining agreements. It was because their refusal to violate the law represented a part of "the process of enforcing [the collective-bargaining] agreement" that this refusal constituted protected concerted activity. *City Disposal,* 465 U.S. at 840, 104 S.Ct. at 1515; *see also Garcia,* 785 F.2d at 809–11.

Vincent's collective bargaining agreement, in contrast, contains nothing that we could construe as stating that he would not have to "participate silently" in illegal practices. Vincent's right not to become involved in, or to report, such activities stems from sources other than his collective bargaining agreement. Thus, reporting his employer did not serve to assert or enforce a right given Vincent by this agreement. Trend does not argue that Vincent's actions in any other manner represented "concerted activities for the purpose of collective bargaining" within the meaning of section 7. His actions therefore do not constitute protected concerted activity within the meaning of section 7 of the NLRA.

Because the NLRA is inapplicable and irrelevant to the situation presented by Vincent's state law claim, the NLRA does not preempt it. Therefore, as indicated earlier, we must remand Vincent's state claim to the district court to determine whether it is preempted by section 301 in light of *Allis-Chalmers.*

## III

Vincent's amended complaint also asserts a claim for damages for Trend's violation of his constitutional rights and alleges facts to establish that Trend was acting as an "agency" of the federal government. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Specifically, Vincent alleges that Trend

> fulfilled the traditional governmental function of repair and maintenance of the United States Air Force Station; performed services at the United States Air Force Station under supervision by officers and agents of the United States Government and purportedly in compliance with federal laws and regulations; conducted its personnel relations subject to federal laws and regulations; and received all of its revenues from the United States government for work performed at the United States Air Force Station.

The district judge dismissed this claim because Trend "was not and is not an agent of the United States Government, and the *Bivens* claim cannot be maintained."

Vincent argues that the district court erred in dismissing the claim because private parties can be held liable in a *Bivens* action. We need not reach this issue, however. Even if we assume without deciding that a private party may be held liable in a *Bivens* action, *see Fonda v. Gray*, 707 F.2d 435, 437 (9th Cir.1983), we find that Vincent's allegations fail to make out a *Bivens* claim because he has failed to show "state action."

"[M]ost rights secured by the Constitution are protected only against infringements by governments." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982) (*Lugar*), quoting *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). For this reason, "a *Bivens* action can be brought only against one who is engaged in governmental (or 'state') action." *Reuber v. United States*, 750 F.2d 1039, 1054 (D.C.Cir.1984) (*Reuber*). Thus, we must determine whether Trend's action in firing Vincent represented federal governmental action.

We find little in our opinions or those of the Supreme Court to guide us in determining what the boundaries of federal governmental action are for purposes of a *Bivens* action. The D.C. Circuit and the Fifth Circuit have resolved this difficulty by assuming that the boundaries of federal governmental action are equivalent to those of "state action" under 42 U.S.C. § 1983 and the fourteenth amendment. *Reuber*, 750 F.2d at 1054 & n. 19; *Dobyns v. E–Systems, Inc.*, 667 F.2d 1219, 1220 n. 1, 1222 (5th Cir.1982) (*Dobyns*). It is unnecessary to determine whether there is a precise equivalence between the standards for finding state action for purposes of a section 1983 claim and for finding governmental action for purposes of a *Bivens* action. Whatever the proper standard for finding governmental action may be, it can be no *more* inclusive than the standard used to find state action for the purposes of section 1983 and the fourteenth amendment. Thus, if Trend's action in firing Vincent could not represent state action, it cannot have represented federal governmental action. We find that Trend's action here could not represent state action.

For Trend's action to have represented state action, the alleged infringement of federal rights must be "fairly attributable to the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 2769, 73 L.Ed.2d 418 (1982) (*Rendell-Baker*), quoting *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2753. In *Rendell-Baker*, the Supreme Court confronted a situation possessing some marked parallels to the case before us. Like Vincent, the plaintiff in *Rendell-Baker* had been discharged by a private entity—in that case, a school for adolescents with special needs—which received most of its referrals from a state agency and local schools and 90–99% of its operating budget from state and federal agencies. The school also had to comply with a variety of detailed state regulations, including ones requiring written descriptions of the school's personnel standards and procedures. Moreover, Rendell-Baker herself

was a vocational counselor hired pursuant to a federal grant, and whose initial appointment had had to be approved by a state committee. *Rendell-Baker*, 457 U.S. at 832–33, 102 S.Ct. at 2766–67. The Court nevertheless determined that Rendell-Baker's dismissal did not constitute state action. In reaching this determination, the Court examined four factors, *id.* at 839–43, 102 S.Ct. at 2770–72, to ascertain whether the private entity's conduct "bore a relationship to the state sufficiently close to warrant calling the [private entity's] personnel decision 'state action.'" *Frazier v. Board of Trustees*, 765 F.2d 1278, 1285 (5th Cir.1985) (*Frazier*), *cert. denied*, — U.S. ——, 106 S.Ct. 2252, 90 L.Ed.2d 697 (1986). We now apply these four factors to determine whether Trend's action can fairly be attributed to the government. *See Rendell-Baker*, 457 U.S. at 839–40, 102 S.Ct. at 2770.

### A.

■ The Court in *Rendell-Baker* first considered the source of the school's funding. On the basis of its decision in *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (*Blum*), it held that the school's receipt of nearly all of its funding from public sources did not render its discharge decisions acts of the state. The Court stated that

> [t]he school ... is not fundamentally different from many private corporations whose business depends primarily on contracts to build roads, bridges, dams, ships, or submarines for the government. Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts.

*Rendell-Baker*, 457 U.S. at 840–41, 102 S.Ct. at 2771.

Vincent's allegation that Trend "received all of its revenues from the United States Government" for the work it performed under its contract with the Air Force thus cannot provide a basis for holding that his dismissal represented government action.

### B.

■ The second factor that the Court considered was the impact of state regulation on the conduct of the private employer. *Id.* at 841, 102 S.Ct. at 2771. The Court held that the extensive state regulation of the school did not render Rendell-Baker's dismissal a state action, particularly since "the various regulations showed relatively little interest in the school's personnel matters." *Id.* In reaching this result, the Court again relied on its decision in *Blum*, in which it had held that "the complaining party must also show that 'there is a sufficiently close nexus between the State and the challenged action of the regulated entity'" to ensure that "the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2785, *quoting Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974) (*Jackson*). In contrast, the Court found in *Rendell-Baker* that the specific decision to discharge the petitioner had not been "compelled or even influenced by any state regulation." *Rendell-Baker*, 457 U.S. at 841, 102 S.Ct. at 2771.

We find the same in Vincent's case. Vincent alleges that Trend should be treated as an agency of the government because it performed services at a United States Air Force base "under supervision by officers and agents of the United States Government and purportedly in compliance with federal laws and regulations" and because it "conducted its personnel relations subject to federal laws and regulations." Government regulation and supervision of how Trend performs its maintenance work, however, bears little if any relation to Trend's personnel policies. Nor does Trend's ostensible compliance with federal labor laws and regulations make the government "responsible" for Vincent's dismissal. There is no federal law, regulation, or policy mandating anything as inher·ently illogical as the dismissal of employees of governmental contractors who attempt to warn the government that these contractors are cheating it. *See Lugar*, 457 U.S. at 937–38, 102 S.Ct. at 2753–54 (relevant inquiry is whether the contested action by

private entity "could in any way be ascribed to a governmental decision" or policy). There is, therefore, not a sufficiently close regulatory nexus to transform Trend's dismissal of Vincent into a federal government action.

### C.

The third factor that the Court considered in *Rendell-Baker* was whether the private entity which had dismissed the plaintiff should be treated as a state actor because it performed a "public function." The Court concluded that the school did not perform a function that was "traditionally the *exclusive* prerogative of the State." *Rendell-Baker*, 457 U.S. at 842, 102 S.Ct. at 2772, *quoting Jackson*, 419 U.S. at 353, 95 S.Ct. at 455.

Vincent claims that Trend "fulfilled the traditional governmental function of repair and maintenance" at the Air Force base. While the repair and maintenance of military aircraft or facilities may "traditionally" have been a function of the government, it is hardly one of the government's "exclusive prerogatives." *Cf. Stevens v. Morrison-Knudsen Saudia Arabia Consortium*, 576 F.Supp. 516, 523 (D.Md.1983) (holding that construction of a military base for a foreign country under contract with the United States government is not traditionally the exclusive prerogative of the government), *aff'd*, 755 F.2d 375 (4th Cir.1985) (per curiam). To hold that maintenance of military equipment was a traditional exclusive prerogative of the state would transform virtually all of the private companies that perform such tasks under contracts with the government into government actors. *Id.* It is certainly possible for a military contractor to serve a function that is traditionally an exclusive government prerogative. *See Dobyns*, 667 F.2d at 1225 (holding that a private company acting as "peacekeeper" in the Sinai performed a function traditionally reserved to the government). We could not, however, characterize as such the maintenance and repair work Trend performs at an Air Force base.

### D.

The fourth issue the Court examined in *Rendell-Baker* was whether there was a "symbiotic relationship" between the school and the state similar to the one the Court had found in *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) (*Burton*). *Burton* involved a restaurant which refused to serve Blacks. The restaurant was located in a public parking garage, benefited from a state agency's tax exemption and maintenance of the premises, and in turn provided the state agency with the income it needed to maintain financial self-sufficiency. The Court held this discriminatory activity to constitute state action because of the close interdependence between the restaurant and the state agency. In *Rendell-Baker*, however, the Court distinguished the situation in *Burton*, where "the State profited from the restaurant's discriminatory conduct," from the situation of the school, whose "fiscal relationship with the State is not different from that of many contractors performing services for the government." *Rendell-Baker*, 457 U.S. at 843, 102 S.Ct. at 2772. On this basis, the Court concluded that there was no symbiotic relationship in the case before it. *Id.*

We see no meaningful distinction between Trend and the standard government contractor. There is no significant financial "integration" between Trend and the Air Force. While Trend may have been dependent economically on its contract with the Air Force, Trend was most certainly not an indispensable element in the Air Force's financial success. This element of financial indispensability, however, is "at the core of the joint participation [found] in *Burton*." *Frazier*, 765 F.2d at 1287–88; *see also Scott v. Eversole Mortuary*, 522 F.2d 1110, 1115 (9th Cir.1975). Moreover, the government did not profit from Trend's alleged unconstitutional conduct. We conclude that there was no symbiotic relationship between Trend and the Air Force.

Since Vincent's dismissal by Trend could not represent state action, it follows that it cannot meet whatever equally or less inclusive standard is appropriate for determin-

ing the existence of governmental action. Therefore, Vincent's second claim fails to state a *Bivens* action; we affirm the district court's dismissal of Vincent's second claim.

## IV

■ Vincent also contends that, had the district court afforded him the opportunity to amend his complaint a second time, he would have alleged a conspiracy between Trend and a certain official or officials of the Air Force to fire Vincent, in which the Air Force officials instigated and directed his termination. We review for abuse of discretion the denial of leave to amend after the filing of a responsive pleading. *Klamath-Lake Pharmaceutical Association v. Klamath Medical Service Bureau,* 701 F.2d 1276, 1292 (9th Cir.), *cert. denied,* 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983).

■ Vincent raises his new theory for the first time on appeal. Generally, a party must present his contention to the district court to preserve it for appeal. Vincent could have done so here by seeking to amend his complaint a second time during the more than a year it was before the district court. Alternatively, once his action had been dismissed, he could have moved to have the judgment reopened under rules 59(e) or 60(b) to allow an amendment. *See* Fed.R.Civ.P. 59(e), 60(b); *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1111 (7th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985); 3 J. Moore, *Moore's Federal Practice* ¶ 15.07[2] at 15–36 to –39, ¶ 15.10 at 15–107 (2d ed. 1985); 6 C. Wright & A. Miller, *Federal Practice and Procedure: Civil,* § 1489, 445 (1971). This approach ensures that any new theory which the plaintiff desires to employ as the basis of his action is at least presented to the trial court. It prevents the district judge from having somehow to divine on his own whether the complaint could conceivably be amended to state a claim. It also obviates the strange result of allowing a plaintiff to transform the court of appeals into a court of first instance by forcing it to make the initial determination as to whether the new theory would survive a motion to dismiss.

■ Nevertheless, the importance of a plaintiff alerting the district court to possible infirmities in his action has given way in the limited area where a pro se plaintiff is involved. In that instance, we will not affirm a dismissal for failure to state a claim unless "it clearly appears ... that the deficiency cannot be overcome by amendment." *Gillespie v. Civiletti,* 629 F.2d 637, 640 (9th Cir.1980) (*Gillespie*) (citations omitted). The reason for the exception is clear: pro se plaintiff's "pleadings are held to a less stringent standard than formal pleadings drafted by lawyers." *Id.* On this reasoning, a plaintiff, who was represented at trial by counsel, does not qualify for this narrow exception.

Subsequently, in *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 541 (9th Cir.1984) (*Robertson*), we applied *Gillespie,* without stating that the *Gillespie* exception was limited to pro se plaintiffs. Nonetheless, because there is no indication in the opinion that the plaintiff was represented by counsel in the district court and because we cited *Gillespie* as the sole authority, *Robertson* may have done no more than follow *Gillespie.* Moreover, in *Robertson* we did not allow the plaintiff to raise an entirely new legal theory for the first time on appeal. Rather, we merely provided the plaintiff with an opportunity to plead facts from which an essential *element* of his *original claim* in the district court could be established. *Robertson,* 749 F.2d at 534, 541. Thus, under no circumstance could *Robertson* be interpreted to extend the exception in *Gillespie* to the circumstances of this case, where Vincent seeks to present for the first time on appeal an altogether novel claim.

Certainly there is no indication in *Robertson* that we meant to overrule our earlier decision of *Stein v. United Artists Corp.,* 691 F.2d 885 (9th Cir.1982) (*Stein*). There, we held that a court did not abuse its discretion in denying a motion to amend a complaint that was submitted with a motion for reconsideration following dismissal when the movant presented no new facts

but only "new theories" and "provided no satisfactory explanation for his failure to fully develop his contentions originally." *Id.* at 898.

The case before us falls within the reasoning of *Stein.* Vincent was represented by counsel in the district court. It was only on appeal—not before the district court—that Vincent asserts he can amend to state a conspiracy theory of liability. Even here, he has offered only a new theory and "no satisfactory explanation for his failure to fully develop his contentions originally." *Id.* Hence, it was not an abuse of discretion for the district court to dismiss without leave to amend.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.