Timothy **BOUDETTE**, Plaintiff,

v.

**ARIZONA PUBLIC SERVICE CO.**, Defendant.

No. Civ. 87–1854 PCT PGR.

United States District Court,
D. Arizona.

May 9, 1988.

Timothy Boudette, pro se.

Janice Harrison Moore, Phoenix, Ariz., for defendant.

## MEMORANDUM AND ORDER

ROSENBLATT, District Judge.

### 1. BACKGROUND INFORMATION

This case is a 42 U.S.C. section 1983 action filed by Timothy Boudette against Arizona Public Service Co. (A.P.S.), in which the plaintiff alleges that on June 18, July 10, August 17 and September 18 or 19, 1984, the defendant "acting under color of law" purposefully disconnected plaintiff's electrical power without affording the plaintiff any administrative or judicial hearing so as to constitute a violation of plaintiff's first, fourth, fifth and ninth amendment rights. The plaintiff claims that this deprivation caused him to suffer monetary damages, psychological stress, public humiliation, and loss of employment, to name just a few. For this reason, plaintiff is requesting both compensatory and punitive damages. This Court has jurisdiction pursuant to 28 U.S.C. section 1343.

### 2. LEGAL ANALYSIS

#### A. *State Action*

■ Pursuant to Fed.R.Civ.P. 12(b)(6), the defendant, A.P.S., moves to dismiss the plaintiff's section 1983 claim for failure to state a claim upon which relief can be granted. For purposes of a Rule 12(b)(6) motion, the complaint is construed in the light most favorable to the plaintiff and the allegations are taken as true. *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Dodd v. Spokane County,* 393 F.2d 330, 334 (9th Cir.1968). The Court's inquiry is directed to whether the allegations of the complaint constitute a claim under section 1983.

To raise a claim under section 1983, a plaintiff must allege facts which show (1) that the defendants acted under color of state law or authority, and (2) that the defendants deprived the plaintiff of a right, privilege or immunity secured by the Constitution and the law of the United States.

*Rendell–Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). Failure to plead or allege any state action or involvement is, by itself, fatal to a section 1983 claim. *Rivera v. Green,* 775 F.2d 1381, 1384 (9th Cir.1985).

■ The ultimate issue in determining whether a person is subject to suit under section 1983 is whether the alleged infringement of federal rights is "fairly attributable to the state." *Rendell–Baker v. Kohn,* 102 S.Ct. at 2770. Therefore, the core issue in this case is whether the defendant's action in disconnecting the plaintiff's electrical service can fairly be seen as "state action." *Id.* A state normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State. *Id.,* 102 S.Ct. at 2771. In other words, the inquiry must be whether there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974).

The Supreme Court in *Jackson v. Metropolitan Edison Co.* confronted a situation similar to this case. In *Jackson,* a citizen brought a section 1983 suit against a privately owned and operated utility company, which disconnected her service for delinquency in payments. The company in that case was a Pennsylvania corporation which held a certificate of public convenience issued by the Pennsylvania Public Utility Commission empowering it to deliver electricity. *Id.* at 346, 95 S.Ct. at 451. In

addition, the company was subject to extensive regulation by the Commission. *Id.*

The *Jackson* Court had to decide whether the service disconnection was "state action." In concluding that the State of Pennsylvania was not sufficiently connected with the company's action so as to make the company's conduct attributable to the state for fourteenth amendment purposes, *id.* at 358–59, 95 S.Ct. at 457, the Supreme Court examined several factors. First, the Court held that the corporation's monopoly status, which was conferred to it by the state, was not state action. *Id.* at 351, 95 S.Ct. at 453. Second, the Court rejected the contention that state action was present merely because the corporation provided an essential public service required to be supplied on a reasonably continuous basis. *Id.* at 352, 95 S.Ct. at 454. Third, the Court rejected the notion that the company's termination was state action because the state had "specifically authorized and approved" the termination practice. *Id.* at 354, 95 S.Ct. at 455. Finally, the Court found that no symbiotic relationship existed because the electric company was privately owned, did not lease its facilities from the state, and was not financially integrated with the state. *Id.* at 358, 95 S.Ct. at 457.

Recently, the Ninth Circuit Court of Appeals addressed a similar issue in *Carlin Communications v. Mountain States Telephone and Telegraph Company,* 827 F.2d 1291 (9th Cir.1987). In *Carlin,* a supplier of adult entertainment messages sought to enjoin a regional telephone company from refusing to carry those messages on its 976 network. *Id.* at 1292–93. The court determined that the initial termination of the supplier's service was "state action" in light of the Arizona deputy county attorney's direct involvement. *Id.* at 1297. The deputy attorney advised Mountain Bell to terminate Carlin's service and threatened to prosecute Mountain Bell if they did not comply. *Id.* at 1295. The court distinguished *Occhino v. Northwestern Bell Tel. Co.,* 675 F.2d 220 (9th Cir.), *cert. denied,* 457 U.S. 1139, 102 S.Ct. 2971, 73 L.Ed.2d 1358 (1982), a case in which the phone company, without particularized

state participation, terminated a customer's service for making abusive phone calls. 827 F.2d at 1295. Thus, the court concluded that by "commending a particular result," the state had involved itself so as to constitute state action. *Id.*

Courts have generally employed three tests to determine whether state action exists: (1) whether the state has so involved itself with the regulated entity that it cannot claim the challenged conduct actually occurred as a result of private choice, *Jackson,* 419 U.S. at 352, 95 S.Ct. at 454; (2) whether the regulated entity is a state actor because it performs a public function, *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946); *Jackson,* 419 U.S. at 352, 95 S.Ct. at 454; and (3) whether a symbiotic relationship exists between the regulated entity and the state, *Jackson,* 419 U.S. at 357, 95 S.Ct. at 456; *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

### 1. Direct Involvement Test

The mere fact that a business is subject to state regulation does not by itself convert its action into that of the state. *Blue v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982). State regulation, even if "extensive and detailed" does not make a business' actions state action. *Jackson,* 419 U.S. at 350, 95 S.Ct. at 453. Even the charge of monopoly status is not determinative. *Id.* at 351, 95 S.Ct. at 453. Further, mere approval of acquiescence in the initiatives of the private party is not enough. *Id.*

Plaintiff contends that the defendant, A.P.S., is substantially and significantly involved with state and local governments in Arizona. Plaintiff bases this conclusion on the fact that defendant is a public utility with monopoly status and regulated by the state corporation commission. Plaintiff further contends that this status gives the defendant an extraordinary type of privilege to receive "profits and gains" that citizens cannot receive. The plaintiff also stresses that defendant's numerous contracts with the state of Arizona, its various municipalities, and its various state agen-

cies further supports substantial state involvement.

◼ Like the electric utility in *Jackson*, A.P.S. is a public utility corporation subject to extensive regulation by the state. Although plaintiff claims that A.P.S. has monopoly power, there is no basis for this assertion. Further, even if A.P.S. had monopoly status, *Jackson* specifically held that was not determinative. Unlike *Carlin*, nothing in the facts indicates any particularized state participation in the termination of plaintiff's electricity. Therefore, there is an insufficient relationship between the defendant's termination procedure and any direct involvement on the part of the state of Arizona.

### 2. Public Function Test

◼ The "public function" test for state action is satisfied only when the private actor is exercising "powers traditionally *exclusively* reserved to the State." *Jackson*, 419 U.S. at 352, 95 S.Ct. at 454 (emphasis added) (public electricity utility was not engaged in a "public function"). *See also Rendell–Baker*, 102 S.Ct. at 2772. Although many regulated businesses provide essential goods and services and are "affected with a public interest," such a status does not convert their every action into that of the state. *Jackson*, 419 U.S. at 354, 95 S.Ct. at 455. It is clear from *Jackson* that a public services corporation is not a state actor in the ordinary performance of its public utility business. Therefore, although as plaintiff states, A.P.S. performs in the public's interest, this fails to satisfy the public function test.

### 3. Symbiotic Relationship Test

◼ The relevant enquiry under the "symbiotic relationship" test is whether the state has so far interjected itself into a position of interdependence with the defendant that it was a joint participant in the defendant's enterprise. *Jackson*, 419 U.S. at 357–58, 95 S.Ct. at 456–57 (citing *Burton*, 365 U.S. at 725, 81 S.Ct. at 861). Courts have held that factors useful in this determination include: whether the state profits from the challenged conduct; whether the state and the defendant are financially "integrated"; whether the defendant company is privately owned; and whether the defendant leases its facilities from the state. *Jackson*, 419 U.S. at 358, 95 S.Ct. at 457; *Vincent v. Trend Western Technical Corp.*, 828 F.2d 563, 569 (9th Cir.1987).

◼ The plaintiff baldly asserts that the state of Arizona is a symbiotic partner with the defendant. Similar to the electric utility corporation in *Jackson*, the defendant is a privately owned corporation, which does not lease its facilities from the state of Arizona. A.P.S. alone is responsible for providing power to its customers. As with most other corporations, the defendant pays taxes to the state and is subject to state regulation. These factors are not sufficient to symbiotically connect the state of Arizona with the defendant's action so as to make the defendant's conduct attributable to the state.

In summary, plaintiff has failed to show that there is a sufficiently close nexus between A.P.S.'s action and the state so that the action of A.P.S. may be fairly attributable to the state of Arizona. Although A.P.S. is a regulated public utility with potential monopoly power, neither of these factors are enough to support direct involvement with the state. Further, the fact that A.P.S. serves the "public interest" does not rise to the level of a public function. Finally, because A.P.S. is a privately owned company and no evidence of financial integration with the state exists, there is no symbiotic relationship. For these reasons, plaintiff's action must fail and defendant's motion to dismiss must be granted.

### B. *Statute of Limitations*

Defendant, in its motion to dismiss, also contends that plaintiff's complaint is time barred and, therefore, must be dismissed. Because the "state action" issue is determinative, this Court need not address this issue. Therefore,

IT IS ORDERED that the defendant's Motion to Dismiss is granted and that this action is dismissed.