**PUBLISHERS PAPER CO., a Delaware corporation, Plaintiff,**

v.

**ASSOCIATION OF WESTERN PULP AND PAPER WORKERS, and Association of Western Pulp and Paper Workers, Local 68, Defendants.**

**Civ. No. 84–830–FR.**

United States District Court,
D. Oregon.

May 22, 1989.

Richard F. Liebman, Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland, Or., for plaintiff.

Gregory A. Hartman, Bennett, Hartman, Tauman & Reynolds, P.C., Portland, Or., for defendants.

OPINION

FRYE, District Judge:

The matter before the court is the motion for summary judgment (# 81) of defendant Association of Western Pulp and Paper Workers, Local 68 (Local 68) against plaintiff, Publishers Paper Co. (Publishers).

## BACKGROUND

This is an action under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Publishers operates pulp and paper mills in Oregon City and Newberg, Oregon. The workers in the Oregon City mill are represented by Local 68, and the workers in the Newberg mill are represented by Local 60 of the Association of Western Pulp and Paper Workers.

In July, 1984, Local 60 workers at the Newberg mill went on strike. The Oregon City mill was initially unaffected, but on the evening of August 3, 1984, striking Local 60 workers from the Newberg mill began picketing at the Oregon City mill. At the shift change, members of Local 68 at the Oregon City mill refused to cross the picket line. Publishers subsequently shut down the Oregon City mill. Mill operations were resumed on August 8, 1984.

Publishers alleges that the Association of Western Pulp and Paper Workers (the Association) and Local 68 breached the no-strike clause in the collective bargaining agreement for the Oregon City mill. Publishers seeks damages for the costs and loss of production occasioned by the shutdown of the Oregon City mill.

In 1986, the parties filed cross-motions for summary judgment. This court denied the motions of the Association and Local 68 and granted the motion of Publishers. After a hearing on damages, this court awarded Publishers $178,150 in damages plus costs. Local 68 and the Association then appealed to the Ninth Circuit. The Ninth Circuit reversed and remanded the judgment as to Local 68. The Ninth Circuit reversed the judgment as to the Association and directed this court to enter summary judgment in favor of the Association.

Local 68 now renews its motion for summary judgment against Publishers. Local 68 relies primarily on the record created on the prior motions for summary judgment, as well as its memorandum in support of the present motion.

## APPLICABLE LAW

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 265 (1986). On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens,* 533 F.2d 429, 432 (9th Cir.1976).

## DISCUSSION

Local 68 moves for summary judgment on the grounds that Publishers has failed to show 1) that the contract between the parties prohibited sympathy strikes; and 2) that Local 68 or its agents acted in any way to breach the no-strike agreement.

### 1. *Prohibition of Sympathy Strikes*

Section 6 of the collective bargaining agreement provides as follows:

It is agreed there shall be no strike, walkout, refusal to report for work, or other interruption of work by the Signatory Union, any Local Union, or any employee during the period of this Agreement. It is agreed there shall be no lockouts by the Signatory Company during the period of this Agreement.

In the event that in violation of the provisions of the preceding paragraph a strike, walkout, refusal to report for work, or other interruption of work shall occur in the mill of the Signatory Company, neither the Signatory Union nor the Local Union shall be suject [sic] to financial liability for such violation provided that the Signatory Union and the Local Union involved immediately after the beginning of such violation shall have (1) publicly declared such action a violation of this Agreement, and (2) in utmost good faith used its best efforts to termi-

nate such violation; it being further agreed that any employee participating in such violation shall in the discretion of the Signatory Company be subject to immediate discharge or other disciplinary action.

Publishers contends that this "no-strike" provision prohibits sympathy strikes. Local 68 contends that Section 6 does not cover sympathy strikes.

The right to engage in a sympathy strike is guaranteed by Section 7 of the National Labor Relations Act (NLRA), 29 U.S.C. § 157. *Oil, Chemical and Atomic Workers v. NLRB*, 842 F.2d 1141, 1143 (9th Cir.1988). This right can be waived by a collective bargaining agreement if the waiver is "clear and unmistakable." *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 708, 103 S.Ct. 1467, 1477, 75 L.Ed.2d 387 (1983).

The NLRB and the courts have not been consistent in their analysis of whether a broad "no-strike" clause of the type found in Section 6 prohibits sympathy strikes. In *Davis–McKee, Inc.*, 238 NLRB 652, 99 LRRM 1307 (1978), the NLRB held that "in the absence of express contractual language or unequivocal bargaining history evidencing an intent to waive the right to engage in sympathy strikes, we shall not infer a waiver." *Id.* at 655. Thus, under *Davis–McKee*, "the presumption is that broad no-strike provisions do not cover sympathy strikes, and the employer has the burden of showing that in a particular case, sympathy strikes are included." *Publishers Paper Co. v. Assoc. of Western Pulp and Paper Workers*, No. 87–3592 at 3 (July 19, 1988) [852 F.2d 1289 (table)] (unpublished disposition).

In 1985, the NLRB changed its policy, holding that broad no-strike provisions should be presumed to include sympathy strikes, and that the burden of proving otherwise was shifted to the union. *Indianapolis Power & Light Co.*, 273 NLRB 1715 (1985), *rev'd on other grounds*, 797 F.2d 1027 (D.C.Cir.1986), *on remand*, 291 NLRB 145, 130 LRRM 1001 (1988). The Ninth Circuit has held that this policy reversal does not apply retroactively, so that

no-strike provisions negotiated after *Davis–McKee* but before *Indianapolis* will be construed in accordance with *Davis–McKee*. *Oil, Chemical*, 842 F.2d at 1144.

In *Oil, Chemical*, the collective bargaining agreement had included a broad no-strike clause since 1959. During the 1977 negotiations, the union introduced but then withdrew language specifically allowing sympathy strikes. Throughout the negotiations, the union maintained that it was merely trying to provide explicit recognition of an existing right to participate in sympathy strikes. 842 F.2d at 1146. The Ninth Circuit held that the NLRB had not fully considered such extrinsic evidence regarding the parties' intent and remanded the case to the NLRB. *Id.*

In the *Indianapolis* case, on remand, the NLRB found that a broad no-strike clause had been in the collective bargaining agreement for a number of years. The union had consistently maintained that this provision allowed sympathy strikes, while the management consistently maintained that sympathy strikes were prohibited. The NLRB concluded that the parties had "agreed to disagree" on this point, and that there was thus no clear and unmistakable waiver of the right to honor picket lines by the union. 130 LRRM at 1004.

In this case, the applicable collective bargaining agreement was negotiated in 1982, while the *Davis–McKee* presumption was in effect. Therefore, it is Publishers' burden to show that Local 68 expressly waived or unequivocally intended to waive the right to engage in sympathy strikes. As there is no express reference to sympathy strikes in Section 6, the court must look to extrinsic evidence of the parties' intent. Such evidence includes "the bargaining history, the parties' interpretation of the contract, the conduct of the parties, and the legal context in which the contract was negotiated." *Publishers Paper, supra,* at 4 (quoting *Oil, Chemical,* 842 F.2d at 1144).

In their earlier motions for summary judgment, the parties did not submit evidence of bargaining history or past interpretations of the no-strike clause. Publishers presented some evidence regarding the

**1124**

parties' conduct at the time of the sympathy strike, but the Ninth Circuit held that this evidence did not support an unambiguous conclusion that the parties intended to include sympathy strikes in the no-strike clause. *Publishers Paper,* at 4.

In its present motion for summary judgment, Local 68 presents almost no new evidence, but relies on the *Davis–McKee* presumption against waiver of the right to participate in sympathy strikes. In response, Publishers has produced voluminous evidence regarding the history of the no-strike provision and the 1982 contract negotiations. This evidence includes portions of the records of negotiations and Publishers' minutes for the Oregon City and Newberg negotiations from 1964 to 1988.

Publishers points to numerous statements by union representatives in various contract negotiations to the effect that the Oregon City mill did not have the right under Section 6 to engage in sympathy strikes. In some of these statements, the union contrasted the situation of Local 68 at Oregon City with the situation of Local 60 in Newberg, which does have the right to participate in sympathy strikes. In addition, Publishers argues that Local 68 repeatedly sought to change the language of Section 6 so that it would have the right to respect picket lines, and that Publishers firmly refused to give up the protection of the no-strike clause as to sympathy strikes.

In contrast to the facts in *Oil, Chemical* and *Indianapolis,* Local 68 appears to have agreed during negotiations that the no-strike clause prohibits sympathy strikes. Local 68 contends, however, that the amendments proposed by the Association and Local 68 were intended to give the union the right "to engage in a sanctioned work stoppage." Local 68 admits that the union gave up this right in the 1964 collective bargaining agreement.

Local 68 next contends that the right of a union to sanction a work stoppage during the terms of the agreement is distinguishable from the right of individual workers to honor picket lines. However, even if there is such a distinction as argued by Local 68,

Local 68 has not produced any evidence indicating that individual workers had the right to engage in a sympathy strike under the 1982 agreement.

■ The court concludes that the evidence produced by Publishers is sufficient to support a finding that Local 68 unequivocally waived its right to participate in sympathy strikes, both in its own right and on behalf of the individual union members. Therefore, genuine issues of material fact preclude summary judgment on this point.

*2. Breach of the No–Strike Agreement*

Local 68 contends that Publishers cannot show any action by Local 68 or its agents that would constitute breach of the no-strike agreement. Local 68 argues that Section 6 does not impose any duties upon it which are broader in scope than the agency standard recognized in *Carbon Fuel Co. v. United Mine Workers,* 444 U.S. 212, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979). Local 68 argues that Publishers has not introduced evidence sufficient to satisfy the *Carbon Fuel* standard or to establish that the parties intended to apply some other standard to the no-strike clause.

■ In *Carbon Fuel,* the Supreme Court held that an international union could not be held liable for a wildcat strike initiated by a local where neither the international union nor its agents participated in or encouraged the strike. The Court held that the common law of agency governs in determining whether any person is acting as the agent of a union in this context. 444 U.S. at 217, 100 S.Ct. at 414. In this case, neither side has fully briefed the issue of whether any agent of Local 68 participated in or encouraged the sympathy strike at the Oregon City mill. Therefore, the court finds that no resolution of this issue is possible at this time.

Publishers also contends, however, that Section 6 imposes affirmative duties on Local 68 beyond those present in the *Carbon Fuel* case. Publishers focuses on the second paragraph of Section 6, which provides:

In the event that in violation of the provisions of the preceding paragraph a

strike, walkout, refusal to report for work, or other interruption of work shall occur in the mill of the Signatory Company, neither the Signatory Union nor the Local Union shall be suject [sic] to financial liability for such violation provided that the Signatory Union and the Local Union involved immediately after the beginning of such violation shall have (1) publicly declared such action a violation of this Agreement, and (2) in utmost good faith used its best efforts to terminate such violation; it being further agreed that any employee participating in such violation shall in the discretion of the Signatory Company be subject to immediate discharge or other disciplinary action.

The no-strike clause in *Carbon Fuel* was similar to the first paragraph of Section 6, but did not include the type of language found in the second paragraph. At one time, the no-strike clause in *Carbon Fuel* included language requiring union officials to "maintain the integrity of this contract and *to exercise their best efforts through available disciplinary measures* to prevent stoppages of work by strike or lockout." 444 U.S. at 220, 100 S.Ct. at 415 (emphasis in original). However, all of this language was deleted, save for the phrase "maintain the integrity of this contract." The Supreme Court held that the remaining language did not retain the duty to use best efforts to prevent stoppages of work. *Id.* at 221, 100 S.Ct. at 416.

There is nothing, however, in the *Carbon Fuel* decision that prevents a union from undertaking an additional duty to use its best efforts to terminate unauthorized strikes. The decision in *Carbon Fuel* is based in part upon a finding that the collective bargaining agreement had once imposed such a duty, but that it had been deleted. If it is established that the 1984 sympathy strike was prohibited by the first paragraph of Section 6, one reasonable interpretation of the second paragraph is that Local 68 had a duty to publicly declare that the sympathy strike violated the collective bargaining agreement and to use its best efforts to terminate the sympathy strike.

■ Local 68 argues that the Association agreed to the language of the second paragraph in order to limit its liability for wildcat strikes, and that the union had no intent to assume additional duties. However, Local 68 has presented no evidence in support of this position, apart from portions of the Uniform Labor Agreements for 1947 and 1948. Local 68 makes a number of factual representations in its reply, but these are not supported by evidence in the record. The court finds that genuine issues of material fact preclude summary judgment on the issue of whether the second paragraph of Section 6 imposes additional duties on Local 68.

The parties have not fully briefed the issue of whether Local 68 used its best efforts to terminate the sympathy strike. Some information on this issue was produced in connection with the earlier motions for summary judgment. The evidence shows that prior to the sympathy strike, certain shop stewards made comments to the effect that they would honor a picket line by Local 60, and that each union member would have to use his own judgment on this issue.

Only one official of Local 68, standing committee member Daniel Whitney, was present on the evening of August 3, 1984, when the pickets from Local 60 arrived at the Oregon City mill. Apparently, all other officials of Local 68 were out of town or unaware of the sympathy strike. In his deposition, Daniel Whitney testified that at the end of the swing shift, he came out to the picket line, read Section 6 to the people assembled there, and advised the members of Local 68 that "as far as the union is concerned we want you to cross the picket line." Whitney Deposition, p. 7. Whitney then acted equivocally by telling those present that he was only returning to the mill to tell his supervisor that he was sick and that he was going home. *Id.*, at 13–16.

Whitney's behavior could be interpreted as less than a wholehearted effort to get union members to cross the picket line. This evidence indicates that there are genuine issues of material fact regarding Local

68's efforts to terminate the sympathy strike.

## CONCLUSION

There are genuine issues of material fact as to whether the collective bargaining agreement prohibits sympathy strikes and as to whether Local 68 or its agents breached the no-strike clause. Therefore, the motion for summary judgment (# 81) by Local 68 is denied.