Concurrence by Judge W. Fletcher OPINION HUCK, District Judge: The central issue on appeal is whether the National Labor Relations Board (the “NLRB” or “Board”) properly determined that a new standard for deferring to arbi-tral decisions, which was developed by the Board in the underlying case, should only be applied prospectively. As a result of the prospective application of the new standard, Petitioner Coletta Kim Beneli’s unfair labor practice complaint against Respondent-Intervenor Babcock & Wilcox Construction Co., Inc. (“B&W”) was analyzed under the previous standard and consequently denied. Beneli also challenges the Board’s substantive decision to affirm the arbitral decision under the previous deferral standard. The Board’s usual practice is to apply its new policies and standards in all pending cases, at whatever stage, subject to balancing such retroactivity against “the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles.” Levitz Furniture Co. of the Pac., Inc., 333 N.L.R.B. 717, 729 (2001). This Court has adopted a five-factor analysis to balance the interests in considering retroactive application of a new standard. Oil, Chem. & Atomic Workers Int'l Union Local 1-547 v. NLRB, 842 F.2d 1141, 1145 (9th Cir. 1988) (citing Montgomery Ward & Co. v. FTC, 691 F.2d 1322, 1333 (9th Cir. 1982)). Balancing those factors here, the NLRB properly applied the new standard only prospectively. Therefore, we deny Beneli’s petition for review. I. BACKGROUND Beneli worked for B&W as a forklift and crane operator and served as a job steward for her union, the International Union of Operating Engineers (“the Union”). Beneli was fired from her job approximately two months after she was hired. According to Beneli, her firing culminated a running dispute over her actions as' a union job steward. According to B&W, Beneli was fired for cause because of repeated safety violations and inappropriate conduct. On the day she was fired, B&W’s project superintendent' summoned Beneli to a meeting with two B&W safety representatives. One of the representatives told Beneli that she was being suspended for three days without pay for two safety policy violations. Beneli résponded to the proposed suspension by stating, “[i]s this the fucking game you guys are going to play?”—a statement’ which' she then repeated. The representatives told Beneli that they considered that language a threat and terminated her. Beneli refused to sign termination papers that claimed that she was fired for “inappropriate conduct.” The Union, in accordance with its collective-bargaining agreement (“CBA”) with B&W, filed a grievance over Beneli’s suspension and termination, alleging that she had been fired for union activities and without just cause. The grievance moved through the CBA process to binding arbitration before a joint labor-management Grievance Review Subcommittee (the “Subcommittee”).. Both Beneli and B&W presented witness testimony before the Subcommittee supporting their respective positions. The Subcommittee denied the grievance and upheld Beneli’s discharge, finding just cause based on her “use of profanity and insubordination.” After reviewing the Subcommittee decision and determining that it was “repugnant to the [National Labor Relations] Act” (the “NLRA”), the NLRB issued a complaint against B&W. Following a hearing before an administrative law judge (“ALJ”) where Beneli and B&W oncfe again presented witness testimony, the ALJ issued a proposed order recommending that the Board defer to the Subcommittee decision and dismiss the complaint. In explaining his deferral decision, the ALJ stated, in- part; that although he credited Beneli’s version of events, the Subcommittee could have credited B&W’s witnesses and reached a different conclusion. The ALJ’s -decision to defer was based on long-standing NLRB precedent set forth in Spielberg Mfg. Co., 112 N.L.R.B. 1080 (1955), and Olin Corp., 268 N.L.R.B. 573 (1984) (“Spielberg/Olin”), Under the Spielberg/Olin standard, deferral to arbi-tral decisions is appropriate when: (1) all parties agree to be bound by the decision; (2) the proceedings appear to be fair and regular; (3) the arbitrator adequately considers the unfair labor practice issue, which requires the unfair labor practice issue and the contractual issue to be “factually parallel” and the arbitrator to have been “presented generally” with the relevant facts; and (4) the arbitration award is not clearly repugnant to the NLRA, Spielberg, 112 N.L.R.B. at 1082; Olin, 268 N.L.R.B. at 574. The NLRB General Counsel filed exceptions to the ALJ’s decision on the merits. -In addition, the NLRB General Counsel recommended that the Board- revisit the standard for determining when to defer to an arbitral decision. The Board requested briefing on whether to adhere to, modify, or abandon the Spielberg/Olin standard. Following an extensive ' review, the Board adopted the ALJ’s decision, denying Beneli’s complaint. In its order; the Board decided to change the standard for determining whether to defer to an arbitration decision. Under the new standard, the Board will now defer to an arbitral decision if the party urging deferral shows that: (1) the arbitrator was explicitly authorized to decide the unfair labor practice issue; (2) the arbitrator was presented with and considered the statutory issue, or was prevented from doing so by- the party opposing deferral; and (3) Board law reasonably permits the award. This standard shifts the burden of proof and makes deferral to an arbitral decision less likely. The NLRB applied the new deferral standard prospectively and declined to apply it in the present case because of its impact on settled expectations of employers and unions, who had bargained for dispute resolution mechanisms under the old NLRB standard. Beneli petitions for review of this retroactivity decision. II. ANALYSIS A, Standard of Review Whether new standards should be applied retroactively is a question of law, which we review de novo. Oil, Chem. & Atomic Workers Int’l, 842 F.2d at 1144 n.2. However, “while the court is not bound by the Board’s views on retroactive application, it should defer to those views absent manifest injustice.” NLRB v. Best Products Co., Inc., 765 F.2d 903, 913 (9th Cir. 1985). See also Saipan Hotel Corp. v. NLRB, 114 F.3d 994, 998 (9th Cir. 1997) (same); Garfias-Rodriguez v. Holder, 702 F.3d 504, 518-19 (9th Cir. 2012) (eh banc) (“When an agency consciously overrules or otherwise alters its own rule or regulation, we presume that it does so as ah exercise of its judgment.”). Accordingly, where, as here, it is clear from the Board’s decision that it considered the question of retroactive versus prospective application, and it provided a reasoned explanation for its choice, we are inclined to give considerable deference to the Board’s expertise. See Hotel, Motel & Rest. Emps. & Bartenders Union Local No. 19 v. NLRB, 785 F.2d 796, 798 (9th Cir. 1986). Review of a.Board decision to defer to an arbitral award is. limited to determining whether the Board has abused its discretion. Garcia v. NLRB, 785 F.2d 807, 809 (9th Cir. 1986). We “will not deny enforcement of,a deferral decision unless the Board clearly departs from its own standards or the standards themselves are invalid.” Id. (citing Servair, Inc. v. NLRB, 726 F.2d 1436, 1439 (9th Cir. 1984)). B. Retroactivity Analysis The Board’s usual practice is to apply new policies and standards in all pending cases at whatever stage, and to balance “the mischief of producing a result which is contrary to a statutory design or to legal and equitable'principles.” Levitz Furniture, 333 N.L.R.B. at 729. To effectuate that balancing,’we consider: (1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard. Oil, Chem. & Atomic Workers Int'l, 842 F.2d at 1146 (citing Montgomery Ward, 691 F.2d at 1333). Applying those five factors to the present case, the balance tips in favor of prospective application of the new standard. 1. This case is one of first impression The first factor—-whether the issue is one of first impression—in this context means something different from what is ordinarily referred to as a “case of first impression.” As developed in Retail, Wholesale & Department Store Union v. NLRB, a case of “first impression” is a case in which one party successfully urged the NLRB to change its rule while a case of “second impression” is any subsequent case brought before the NLRB on the same issue. 466 F.2d 380, 383-84, 387 (D.C. Cir. 1972). A new rule is more likely to be applied in a case of “first impression,” but less likely in a pending case of “second impression.” Id. The new deferral standard qualifies this case as a case of “first impression.” The Board established a' new standard to replace the Spielberg/Olin deferral standard that had been in existence for decades. Thus, this factor weighs in faivor of retroactively applying the new' standard, at least to the present case, as prospective application would “deny the benefits of a change in the law to the very parties whose efforts were largely responsible for bringing it about.” Garfias-Rodriguez, 702 F.3d at 520 (citing Retail Union, 466 F.2d at 390). However, as acknowledged at oral argument by amicus curiae Association for Union Democracy, the deferral standard was changed on the recommendation of the NLRB General - Counsel, not Beneli. Beneli never advocated for the change. Therefore,' Beneli’s .“efforts were [not] largely responsible for bringing it about.” Garfias-Rodriguez, 702 F.3d at 520. Given the facts of this case, this factor is entitled to lesser weight.' 2. The new rule represents an abrupt departure from well-established practice The Spielberg/Olin deferral standard was based on NLRB decisions that served as controlling law for decades—see Spielberg, 112 N.L.R.B. 1080 (decided June 8, 1955), and Olin, 268 N.L.R.B. 573 (decided January 19,1984). The new standard shifts the burden of proof for challenging the arbitration award to the party advocating deferral to the arbitral award and is less deferential to the arbitrator’s decision. The more deferential Spielberg/Olin standard controlled. for almost 60 years, and employers and unions relied upon it during that time period. Courts of appeals throughout the country, including this one, repeatedly upheld that standard. Thus, the new standard represents an abrupt departure from well-established practice. Even more, the shift in burden of proof reinforces the significance of this factor. See Oil, Chem. & Atomic Workers Int'l, 842 F.2d at 1145 (“The Indianapolis decision shifted the ... burden of proof, 180 degrees.... Thus, the Union would bear the burden of proving the clause did not waive sympathy strikes, while, before, the employer needed to prove such waiver was intended. This burden is significant, as the Union might have continued to bargain for the express exclusion of sympathy strikes, had it known it would be required to prove intent.”). And altering decades of precedent by formulating a new, more lenient test for deference similarly warrants prospective application given that deference is the primary question before the ALJ and the Board. See Levitz Furniture, 333 N.L.R.B. at 729 (applying new, “significantly more lenient” standard prospectively when the previous standard “was the law for nearly half a century”); cf. John Deklewa & Sons, 282 N.L.R.B. 1375, 1389 (1987) (acknowledging that “new law [that] represents a sharp departure from past precedent” should be applied prospectively); Retail Union, 466 F.2d at 391 (“The standard ... was well established and long accepted by the Board.... [T]he Board had confronted the problem before, had established an explicit standard of conduct, and [retroactive application of the new standard would] punish conformity to that standard under a new. standard subsequently adopted”). Thus, this factor strongly favors prospective application. 3. B&W relied on the Spielberg/Olin standard The Spielberg/Olin standard was in place when B&W and the Union entered into the CBA in 1996, the parties amended the CBA’s grievance procedure in 2004, the Subcommittee heard Beneli’s grievance in 2009, and the ALJ issued his decision in this matter in 2012. At each of those steps, B&W would have relied upon the Spielberg/Olin standard in formulating its decisions with regard to negotiating the CBA with the Union,, determining whether to oppose the Unipn before the Subcommittee, and developing and presenting its case to the Subcommittee. Presumably, B&W would have more explicitly argued and requested a decision on the unfair labor practice issue had it been operating under the new standard. In order to meet the Board’s new deferral requirement that the arbitrator must “identify the. issue and generally explain why he or she finds that the facts presented either do or do not support the unfair labor practice allegation—or was prevented from doing so by the party opposing deferral,”- B&W would have changed its approach before the Subcommittee. However, because B&W was operating under the Spielberg/Olin standard that had been in plaee for nearly 60 years, it-had no reason to ensure that the Subcommittee decision met these specific identification and explanation requirements.[1] Moreover, no party objected to that standard nor proffered the standard ultimately adopted by the Board. It was only after -receiving the ALJ’s adverse determination that.any party in the present case found fault with the Spielberg/Olin standard. These reliances and similar equitable considerations support the prospective application of the new standard. 4. Retroactive application would severely burden B&W 'The Subcommittee hearing and decision occurred in 2009, over seven years ago. It cannot be questioned that beginning a new arbitration (from October 2009) or relit-igating the original NLRB complaint (from August 2011) would be exceedingly difficult and burdensome given the passage of time, the closure of B&Ws worksite, faded memories, and the likely dispersal of percipient witnesses. Such a heavy burden on B&W favors prospective application. See Retail Union, 466 F.2d at 392 (“Unless the burden of imposing the new standard is de minimis, or the newly discovered statutory design compels its retroactive application, the principles which underlie the very notion of an ordered society, in which authoritatively established rules of conduct may fairly be relied upon, must preclude its retroactive effect ... ”). 5. The balance of statutory interests favors prospective application Congress has established that labor arbitration agreed upon by a union and an employer is “the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement.” 29 U.S.C. § 173(d). In fact, the NLRA' is “ ‘primarily designed to promote industrial peace and stability by encouraging the practice and procedure of collective bargaining.’” Carey v. Westinghouse Elec. Corp., 375 U.S. 261, 271, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964) (quoting Int’l Harvester Co., 138 N.L.R.B. 923, 925-26 (1962)). One of the Board’s primary functions is to foster stability in labor relations, to encourage good-faith negotiation, and to give effect to the parties’ agreements. See, e.g., Colgate-Palmolive-Peet Co. v. NLRB, 338 U.S. 355, 362, 70 S.Ct. 166, 94 L.Ed. 161 (1949) (“To achieve stability of labor relations was the primary objective of Congress in enacting the National Labor Relations Act.”). Arbitration plays a central role in achieving this goal. United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) (“[A]rbitration is the substitute for industrial strife.”). As the Board noted below, this stability is undermined when the Board adopts policies that detract from final and binding arbitration procedures to which employers and unions have previously agreed. Because the Subcommittee’s decision did not include the explicit findings required under the, new -standard, retroactive application would necessitate new analysis by the Subcommittee and an ALJ. .Such a requirement would undermine the binding arbitration to which the Union, Beneli, and B&W agreed and would impair the “stability of labor relations [that] was the primary objective of Congress in enacting the National Labor Relations Act.” Colgate-Palmolive-Peet, 338 U.S. at 362, 70 S.Ct. 166. Therefore, the primary purpose of the NLRA favors prospective application. C. Substantive Review under Spielberg/Olin The Board is afforded broad discretion in its determination whether to defer to an arbitration panel’s decision. The Board did not abuse its discretion when it deferred to the Subcommittee decision under the Spielberg/Olin standard. In her appeal, Beneli challenges the Board’s deferral decision only under the. fourth prong of the Spielberg/Olin standard, i.e., that the arbitration award is “clearly repugnant” to the Act. Spielberg, 112 N.L.R.B. at 1082; Olin, 268 N.L.R.B. at 574. An arbitrator’s decision is “clearly repugnant” to the NLRA if the decision is “palpably wrong, i.e., unless the arbitrator’s decision is not susceptible to an interpretation consistent with the Act.” Olin, 268 N.L.R.B. at 574 (internal quotation marks and footnote omitted). Thus, “[i]f the reasoning behind an award is susceptible of two interpretations, one permissible and one -impermissible, it is simply not true that the award is ‘clearly repugnant’ to the Act.” Douglas Aircraft Co. v. NLRB, 609 F.2d 352, 354-55 (9th Cir. 1979). Beneli was cited for multiple safety violations prior to her termination, including two safety violations the day of her termination. Additionally, Beneli used profanity toward her superiors when she was presented with a three-day suspension for safety violations. The Union presented testimony to the Subcommittee that included evidence concerning Beneli’s union activities. B&W presented evidence that it was Beneli’s safety violations and use of profanity, not her union activities, that served as the motivation for her termination. Finding B&W’s evidence credible, the Subcommittee determined that Beneli’s profanity and insubordinate conduct were the impetus for Beneli’s termination and upheld her discharge. Thus, the arbitration decision that Beneli was discharged for cause was susceptible to ah interpretation consistent with-the Act. See'id. Therefore, the Board did mot abuse its discretion in deferring to the Subcommittee .decision. III. CONCLUSION Although Beneli’s case was one of first impression before the Board, the other four factors of the retroactivity test substantially outweigh that one factor. The new deferral standard represents an abrupt departure from the more deferential Spielberg/Olin standard that had been followed in labor disputes for almost 60 years. The reliance interests of the parties combined with the -primary purpose of the NLRA strongly favor prospective application of the new standard. Retroactive application of, the newly-devised standard would result in “work[ing] hardship upon [B&W] altogether out of proportion to the public ends to be, accomplished.” NLRB v. Guy F. Atkinson Co., 195 F.2d 141, 149 (9th Cir. 1952). Therefore, the new standard should be prospectively , applied. Finally, because the Subcommittee decision could be interpreted in a manner that is not clearly repugnant to the NLRA, the Board did not abuse its discretion in deferring to the arbitral decision. Each party shall bear its own costs of this appeal. PETITION FOR REVIEW DENIED. . The Union also relied on, and proceeded in accordance with, the CBA’s grievance procedure that was negotiated undfer Spielberg/Olin when the Union prosecuted Beneli’s grievance.