**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| COLETTA KIM BENELI, *Petitioner*, | No. 15-73426 |
| v. | NLRB No. 28-CA-022625 |
| THE NATIONAL LABOR RELATIONS BOARD, *Respondent*, | OPINION |
| and | |
| BABCOCK & WILCOX CONSTRUCTION CO., INC., *Respondent-Intervenor*. | |

On Petition for Review of an Order of the
National Labor Relations Board

Argued and Submitted May 15, 2017
San Francisco, California

Filed October 17, 2017

Before:  William A. Fletcher and Richard C. Tallman,
Circuit Judges, and Paul C. Huck,[*] District Judge.

Opinion by Judge Huck;
Concurrence by Judge W. Fletcher

## SUMMARY[**]

## National Labor Relations Board

The panel denied an employee's petition for review, held that the National Labor Relations Board ("NLRB") properly applied a new standard for deferring to arbitral decisions only prospectively, and upheld the NLRB's substantive decision to affirm an arbitral decision – denying the employee's unfair labor practice complaint – under the previous more deferential standard.

The panel applied the five factors articulated in *Montgomery Ward & Co. v. FTC*, 691 F.2d 1322, 1333 (9th Cir. 1982), to review the NLRB's decision to apply only prospectively the new standard for arbitral deferral.  First, the panel held that this case was a case of "first impression," and the factor weighed in favor of retroactive application of the new standard.  Second, the panel held that the new standard represented an abrupt departure from well-established practice, and this factor strongly favored

[*] The Honorable Paul C. Huck, United States District Judge for the Southern District of Florida, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

prospective application. Third, the panel held that the employer relied on the old standard that was in place for nearly 60 years, and this reliance and other equitable considerations supported only the prospective application of the new standard. Fourth, the panel held that retroactive application would severely burden the employer, and this favored prospective application. Fifth, the panel held that the balance of statutory interests favored prospective application. The panel concluded that the NLRB did not abuse its discretion when it deferred to the arbitral decision under the old more deferential standard set forth in *Spielberg Mfg. Co.*, 112 N.L.R.B. 1080 (1995), and *Olin Corp.*, 268 N.L.R.B. 573 (1984).

Judge Fletcher concurred in the result. Judge Fletcher dissented from the majority's use of the factors articulated in *Montgomery Ward & Co.* to review the NLRB's decision to apply only prospectively the new deference rule. Instead, Judge Fletcher would address the prospective-only application of the new rule under the *NLRB v. Wyman-Gordon*, 394 U.S. 759 (1969), framework, which addresses concerns of informed and deliberate agency rulemaking.

## COUNSEL

Myron L. Scott (argued), Law Office of Myron Scott, Tempe, Arizona, for Petitioner.

Ruth E. Burdick (argued), Deputy Assistant General Counsel; Heather S. Beard, Attorney; Robert J. Engleheart, Supervisory Attorney; Linda Dreeben, Deputy Associate General Counsel; John H. Ferguson, Associate General Counsel; Jennifer Abruzzo, Deputy General Counsel;

Richard F. Griffin Jr., General Counsel; National Labor Relations Board, Washington, D.C.; for Respondent.

Julie A. Trout (argued), Akron, Ohio, for Respondent-Intervenor.

Michael Goldberg (argued), Cherry Hill, New Jersey, for Amicus Curiae Association for Union Democracy.

**OPINION**

HUCK, District Judge:

The central issue on appeal is whether the National Labor Relations Board (the "NLRB" or "Board") properly determined that a new standard for deferring to arbitral decisions, which was developed by the Board in the underlying case, should only be applied prospectively. As a result of the prospective application of the new standard, Petitioner Coletta Kim Beneli's unfair labor practice complaint against Respondent-Intervenor Babcock & Wilcox Construction Co., Inc. ("B&W") was analyzed under the previous standard and consequently denied. Beneli also challenges the Board's substantive decision to affirm the arbitral decision under the previous deferral standard.

The Board's usual practice is to apply its new policies and standards in all pending cases, at whatever stage, subject to balancing such retroactivity against "the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles." *Levitz Furniture Co. of the Pac., Inc.*, 333 N.L.R.B. 717, 729 (2001). This Court has adopted a five-factor analysis to balance the interests in considering retroactive application of a new standard. *Oil, Chem. & Atomic Workers Int'l Union Local 1-547 v. NLRB*,

842 F.2d 1141, 1145 (9th Cir. 1988) (citing *Montgomery Ward & Co. v. FTC*, 691 F.2d 1322, 1333 (9th Cir. 1982)). Balancing those factors here, the NLRB properly applied the new standard only prospectively. Therefore, we deny Beneli's petition for review.

## I.  BACKGROUND

Beneli worked for B&W as a forklift and crane operator and served as a job steward for her union, the International Union of Operating Engineers ("the Union").  Beneli was fired from her job approximately two months after she was hired.  According to Beneli, her firing culminated a running dispute over her actions as a union job steward.  According to B&W, Beneli was fired for cause because of repeated safety violations and inappropriate conduct.

On the day she was fired, B&W's project superintendent summoned Beneli to a meeting with two B&W safety representatives.  One of the representatives told Beneli that she was being suspended for three days without pay for two safety policy violations.  Beneli responded to the proposed suspension by stating, "[i]s this the fucking game you guys are going to play?"—a statement which she then repeated. The representatives told Beneli that they considered that language a threat and terminated her.  Beneli refused to sign termination papers that claimed that she was fired for "inappropriate conduct."

The Union, in accordance with its collective-bargaining agreement ("CBA") with B&W, filed a grievance over Beneli's suspension and termination, alleging that she had been fired for union activities and without just cause.  The grievance moved through the CBA process to binding arbitration before a joint labor-management Grievance Review Subcommittee (the "Subcommittee").  Both Beneli

and B&W presented witness testimony before the Subcommittee supporting their respective positions. The Subcommittee denied the grievance and upheld Beneli's discharge, finding just cause based on her "use of profanity and insubordination."

After reviewing the Subcommittee decision and determining that it was "repugnant to the [National Labor Relations] Act" (the "NLRA"), the NLRB issued a complaint against B&W. Following a hearing before an administrative law judge ("ALJ") where Beneli and B&W once again presented witness testimony, the ALJ issued a proposed order recommending that the Board defer to the Subcommittee decision and dismiss the complaint. In explaining his deferral decision, the ALJ stated, in part, that although he credited Beneli's version of events, the Subcommittee could have credited B&W's witnesses and reached a different conclusion.

The ALJ's decision to defer was based on long-standing NLRB precedent set forth in *Spielberg Mfg. Co.*, 112 N.L.R.B. 1080 (1955), and *Olin Corp.*, 268 N.L.R.B. 573 (1984) ("*Spielberg/Olin*"). Under the *Spielberg/Olin* standard, deferral to arbitral decisions is appropriate when: (1) all parties agree to be bound by the decision; (2) the proceedings appear to be fair and regular; (3) the arbitrator adequately considers the unfair labor practice issue, which requires the unfair labor practice issue and the contractual issue to be "factually parallel" and the arbitrator to have been "presented generally" with the relevant facts; and (4) the arbitration award is not clearly repugnant to the NLRA. *Spielberg*, 112 N.L.R.B. at 1082; *Olin*, 268 N.L.R.B. at 574. The NLRB General Counsel filed exceptions to the ALJ's decision on the merits. In addition, the NLRB General Counsel recommended that the Board revisit the standard for

determining when to defer to an arbitral decision. The Board requested briefing on whether to adhere to, modify, or abandon the *Spielberg/Olin* standard.

Following an extensive review, the Board adopted the ALJ's decision, denying Beneli's complaint. In its order, the Board decided to change the standard for determining whether to defer to an arbitration decision. Under the new standard, the Board will now defer to an arbitral decision if the party urging deferral shows that: (1) the arbitrator was explicitly authorized to decide the unfair labor practice issue; (2) the arbitrator was presented with and considered the statutory issue, or was prevented from doing so by the party opposing deferral; and (3) Board law reasonably permits the award. This standard shifts the burden of proof and makes deferral to an arbitral decision less likely. The NLRB applied the new deferral standard prospectively and declined to apply it in the present case because of its impact on settled expectations of employers and unions, who had bargained for dispute resolution mechanisms under the old NLRB standard. Beneli petitions for review of this retroactivity decision.

## II.  ANALYSIS

### A.  *Standard of Review*

Whether new standards should be applied retroactively is a question of law, which we review de novo. *Oil, Chem. & Atomic Workers Int'l*, 842 F.2d at 1144 n.2. However, "while the court is not bound by the Board's views on retroactive application, it should defer to those views absent manifest injustice." *NLRB v. Best Products Co., Inc.*, 765 F.2d 903, 913 (9th Cir. 1985). *See also Saipan Hotel Corp. v. NLRB*, 114 F.3d 994, 998 (9th Cir. 1997) (same); *Garfias-Rodriguez v. Holder*, 702 F.3d 504, 518–19 (9th Cir.

2012) (en banc) ("When an agency consciously overrules or otherwise alters its own rule or regulation, we presume that it does so as an exercise of its judgment."). Accordingly, where, as here, it is clear from the Board's decision that it considered the question of retroactive versus prospective application, and it provided a reasoned explanation for its choice, we are inclined to give considerable deference to the Board's expertise. *See Hotel, Motel & Rest. Emps. & Bartenders Union Local No. 19 v. NLRB*, 785 F.2d 796, 798 (9th Cir. 1986).

Review of a Board decision to defer to an arbitral award is limited to determining whether the Board has abused its discretion. *Garcia v. NLRB*, 785 F.2d 807, 809 (9th Cir. 1986). We "will not deny enforcement of a deferral decision unless the Board clearly departs from its own standards or the standards themselves are invalid." *Id.* (citing *Servair, Inc. v. NLRB*, 726 F.2d 1435, 1439 (9th Cir. 1984)).

## B. *Retroactivity Analysis*

The Board's usual practice is to apply new policies and standards in all pending cases at whatever stage, and to balance "the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles." *Levitz Furniture*, 333 N.L.R.B. at 729. To effectuate that balancing, we consider:

> (1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a

retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.

*Oil, Chem. & Atomic Workers Int'l*, 842 F.2d at 1145 (citing *Montgomery Ward*, 691 F.2d at 1333). Applying those five factors to the present case, the balance tips in favor of prospective application of the new standard.

### 1.  This case is one of first impression

The first factor—whether the issue is one of first impression—in this context means something different from what is ordinarily referred to as a "case of first impression." As developed in *Retail, Wholesale & Department Store Union v. NLRB*, a case of "first impression" is a case in which one party successfully urged the NLRB to change its rule while a case of "second impression" is any subsequent case brought before the NLRB on the same issue. 466 F.2d 380, 383–84, 387 (D.C. Cir. 1972). A new rule is more likely to be applied in a case of "first impression," but less likely in a pending case of "second impression." *Id*.

The new deferral standard qualifies this case as a case of "first impression." The Board established a new standard to replace the *Spielberg/Olin* deferral standard that had been in existence for decades. Thus, this factor weighs in favor of retroactively applying the new standard, at least to the present case, as prospective application would "deny the benefits of a change in the law to the very parties whose efforts were largely responsible for bringing it about." *Garfias-Rodriguez*, 702 F.3d at 520 (citing *Retail Union*, 466 F.2d at 390).

However, as acknowledged at oral argument by *amicus curiae* Association for Union Democracy, the deferral standard was changed on the recommendation of the NLRB General Counsel, not Beneli.  Beneli never advocated for the change.  Therefore, Beneli's "efforts were [not] largely responsible for bringing it about."  *Garfias-Rodriguez*, 702 F.3d at 520.  Given the facts of this case, this factor is entitled to lesser weight.

### 2. The new rule represents an abrupt departure from well-established practice

The *Spielberg/Olin* deferral standard was based on NLRB decisions that served as controlling law for decades— see *Spielberg*, 112 N.L.R.B. 1080 (decided June 8, 1955), and *Olin*, 268 N.L.R.B. 573 (decided January 19, 1984).  The new standard shifts the burden of proof for challenging the arbitration award to the party advocating deferral to the arbitral award and is less deferential to the arbitrator's decision.  The more deferential *Spielberg/Olin* standard controlled for almost 60 years, and employers and unions relied upon it during that time period. Courts of appeals throughout the country, including this one, repeatedly upheld that standard.  Thus, the new standard represents an abrupt departure from well-established practice.

Even more, the shift in burden of proof reinforces the significance of this factor.  *See Oil, Chem. & Atomic Workers Int'l*, 842 F.2d at 1145 ("The *Indianapolis* decision shifted the . . . burden of proof, 180 degrees. . . . Thus, the Union would bear the burden of proving the clause did not waive sympathy strikes, while, before, the employer needed to prove such waiver was intended. This burden is significant, as the Union might have continued to bargain for the express exclusion of sympathy strikes, had it known it would be required to prove intent.").  And altering decades

of precedent by formulating a new, more lenient test for deference similarly warrants prospective application given that deference is the primary question before the ALJ and the Board.  *See Levitz Furniture*, 333 N.L.R.B. at 729 (applying new, "significantly more lenient" standard prospectively when the previous standard "was the law for nearly half a century"); *cf. John Deklewa & Sons*, 282 N.L.R.B. 1375, 1389 (1987) (acknowledging that "new law [that] represents a sharp departure from past precedent" should be applied prospectively); *Retail Union*, 466 F.2d at 391 ("The standard . . . was well established and long accepted by the Board. . . . [T]he Board had confronted the problem before, had established an explicit standard of conduct, and [retroactive application of the new standard would] punish conformity to that standard under a new standard subsequently adopted."). Thus, this factor strongly favors prospective application.

### 3.  B&W relied on the *Spielberg/Olin* standard

The *Spielberg/Olin* standard was in place when B&W and the Union entered into the CBA in 1996, the parties amended the CBA's grievance procedure in 2004, the Subcommittee heard Beneli's grievance in 2009, and the ALJ issued his decision in this matter in 2012.  At each of those steps, B&W would have relied upon the *Spielberg/Olin* standard in formulating its decisions with regard to negotiating the CBA with the Union, determining whether to oppose the Union before the Subcommittee, and developing and presenting its case to the Subcommittee. Presumably, B&W would have more explicitly argued and requested a decision on the unfair labor practice issue had it been operating under the new standard.  In order to meet the Board's new deferral requirement that the arbitrator must "identify the issue and generally explain why he or she finds

that the facts presented either do or do not support the unfair labor practice allegation—or was prevented from doing so by the party opposing deferral," B&W would have changed its approach before the Subcommittee. However, because B&W was operating under the *Spielberg/Olin* standard that had been in place for nearly 60 years, it had no reason to ensure that the Subcommittee decision met these specific identification and explanation requirements.[1] Moreover, no party objected to that standard nor proffered the standard ultimately adopted by the Board. It was only after receiving the ALJ's adverse determination that any party in the present case found fault with the *Spielberg/Olin* standard. These reliances and similar equitable considerations support the prospective application of the new standard.

### 4. Retroactive application would severely burden B&W

The Subcommittee hearing and decision occurred in 2009, over seven years ago. It cannot be questioned that beginning a new arbitration (from October 2009) or relitigating the original NLRB complaint (from August 2011) would be exceedingly difficult and burdensome given the passage of time, the closure of B&W's worksite, faded memories, and the likely dispersal of percipient witnesses. Such a heavy burden on B&W favors prospective application. *See Retail Union*, 466 F.2d at 392 ("Unless the burden of imposing the new standard is *de minimis*, or the newly discovered statutory design compels its retroactive application, the principles which underlie the very notion of an ordered society, in which authoritatively established rules

---

[1] The Union also relied on, and proceeded in accordance with, the CBA's grievance procedure that was negotiated under *Spielberg/Olin* when the Union prosecuted Beneli's grievance.

of conduct may fairly be relied upon, must preclude its retroactive effect . . .").

### 5. The balance of statutory interests favors prospective application

Congress has established that labor arbitration agreed upon by a union and an employer is "the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." 29 U.S.C. § 173(d). In fact, the NLRA is "'primarily designed to promote industrial peace and stability by encouraging the practice and procedure of collective bargaining.'" *Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 271 (1964) (quoting *Int'l Harvester Co.*, 138 N.L.R.B. 923, 925–26 (1962)).

One of the Board's primary functions is to foster stability in labor relations, to encourage good-faith negotiation, and to give effect to the parties' agreements. *See, e.g.*, *Colgate-Palmolive-Peet Co. v. NLRB*, 338 U.S. 355, 362 (1949) ("To achieve stability of labor relations was the primary objective of Congress in enacting the National Labor Relations Act."). Arbitration plays a central role in achieving this goal. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578 (1960) ("[A]rbitration is the substitute for industrial strife."). As the Board noted below, this stability is undermined when the Board adopts policies that detract from final and binding arbitration procedures to which employers and unions have previously agreed.

Because the Subcommittee's decision did not include the explicit findings required under the new standard, retroactive application would necessitate new analysis by the Subcommittee and an ALJ. Such a requirement would undermine the binding arbitration to which the Union,

Beneli, and B&W agreed and would impair the "stability of labor relations [that] was the primary objective of Congress in enacting the National Labor Relations Act." *Colgate-Palmolive-Peet*, 338 U.S. at 362. Therefore, the primary purpose of the NLRA favors prospective application.

## C.  *Substantive Review under* Spielberg/Olin

The Board is afforded broad discretion in its determination whether to defer to an arbitration panel's decision. The Board did not abuse its discretion when it deferred to the Subcommittee decision under the *Spielberg/Olin* standard.

In her appeal, Beneli challenges the Board's deferral decision only under the fourth prong of the *Spielberg/Olin* standard, i.e., that the arbitration award is "clearly repugnant" to the Act. *Spielberg*, 112 N.L.R.B. at 1082; *Olin*, 268 N.L.R.B. at 574. An arbitrator's decision is "clearly repugnant" to the NLRA if the decision is "palpably wrong, i.e., unless the arbitrator's decision is not susceptible to an interpretation consistent with the Act." *Olin*, 268 N.L.R.B. at 574 (internal quotation marks and footnote omitted). Thus, "[i]f the reasoning behind an award is susceptible of two interpretations, one permissible and one impermissible, it is simply not true that the award is 'clearly repugnant' to the Act." *Douglas Aircraft Co. v. NLRB*, 609 F.2d 353, 354–55 (9th Cir. 1979).

Beneli was cited for multiple safety violations prior to her termination, including two safety violations the day of her termination. Additionally, Beneli used profanity toward her superiors when she was presented with a three-day suspension for safety violations. The Union presented testimony to the Subcommittee that included evidence concerning Beneli's union activities. B&W presented

evidence that it was Beneli's safety violations and use of profanity, not her union activities, that served as the motivation for her termination. Finding B&W's evidence credible, the Subcommittee determined that Beneli's profanity and insubordinate conduct were the impetus for Beneli's termination and upheld her discharge. Thus, the arbitration decision that Beneli was discharged for cause was susceptible to an interpretation consistent with the Act. *See id.* Therefore, the Board did not abuse its discretion in deferring to the Subcommittee decision.

## III.    CONCLUSION

Although Beneli's case was one of first impression before the Board, the other four factors of the retroactivity test substantially outweigh that one factor. The new deferral standard represents an abrupt departure from the more deferential *Spielberg/Olin* standard that had been followed in labor disputes for almost 60 years. The reliance interests of the parties combined with the primary purpose of the NLRA strongly favor prospective application of the new standard. Retroactive application of the newly-devised standard would result in "work[ing] hardship upon [B&W] altogether out of proportion to the public ends to be accomplished." *NLRB v. Guy F. Atkinson*, 195 F.2d 141, 149 (9th Cir. 1952). Therefore, the new standard should be prospectively applied. Finally, because the Subcommittee decision could be interpreted in a manner that is not clearly repugnant to the NLRA, the Board did not abuse its discretion in deferring to the arbitral decision.

Each party shall bear its own costs of this appeal.

**PETITION FOR REVIEW DENIED.**

W. FLETCHER, Circuit Judge, concurring in the result:

I concur in the result. However, I respectfully dissent from the majority's use of the factors articulated in *Montgomery Ward & Co. v. FTC*, 691 F.2d 1322, 1333 (9th Cir. 1982) (relying on *Retail, Wholesale and Department Store Union v. NLRB*, 466 F.2d 380, 390–93 (D.C. Cir. 1972)), to review a decision of the National Labor Relations Board to apply only prospectively a new rule declared in an adjudicative proceeding.

Prior to its decision in this case, the Board reviewed arbitral decisions under a highly deferential standard. During the administrative appeal in this case, the Board changed its standard so that it now reviews arbitral decisions less deferentially. However, the Board declined to apply its new standard to the case before it. Appellant, who lost the arbitration, and who lost before the Board when it applied its highly deferential standard, asks us to hold that the Board erred in refusing to apply its new standard to her case.

Citing *Oil, Chemical & Atomic Workers Int'l Local 1-547 v. NLRB*, 842 F.2d 1141, 1145 n.2 (9th Cir. 1988), the majority reviews *de novo* the Board's decision to apply its new standard only prospectively. In *Oil, Chemical*, we used the factors articulated in *Montgomery Ward* in reviewing the Board's decision to apply its new rule retroactively. *Id.* at 1145. Consistent with *Oil, Chemical*, we have applied the *Montgomery Ward* factors to review agency decisions to apply retroactively new rules developed in agency adjudication. *See*, *e.g.*, *Garfias-Rodriguez v. Holder*, 702 F.3d 504, 520–23 (9th Cir. 2012) (en banc). The majority applies these factors in its review today.

However, we have never applied the *Montgomery Ward* factors to review an agency's decision to apply *only*

*prospectively* a new rule developed in adjudication. Retroactive application of a new rule in an adjudicative proceeding raises obvious concerns of fairness, which we explicitly invoked in *Oil, Chemical*:

> [I]t is inappropriate to apply retroactively the new . . . standard to interpret the collective bargaining agreement in this case, since the new placement of the presumption [under the new standard] could not have been anticipated by the parties and thus could not have been their intent.

*Id.* at 1144.  Prospective application of a new rule developed in adjudication does not raise these concerns.  If a rule is new, the parties could not have relied on it when they engaged in the conduct that later became the subject of the adjudicative proceeding.

Prospective-only application of a new rule declared in agency adjudication raises different concerns.  The Administrative Procedure Act allows an agency to declare interpretive rules in adjudication, but requires notice-and-comment procedure for the promulgation of legislative rules. An agency does not have the authority to declare prospective-only legislative rules through adjudication, for such rules avoid the required notice-and-comment rulemaking procedure.  *See NLRB v. Wyman-Gordon*, 394 U.S. 759 (1969) (holding invalid a legislative rule developed in agency adjudication).  I would not analyze the prospective-only application of the NLRB's new rule under the *Montgomery Ward* framework, which addresses concerns of fairness arising out of retroactive application.  I would, instead, address the prospective-only application of the new rule under the *Wyman-Gordon* framework, which

addresses concerns of informed and deliberate agency rulemaking.